1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JONATHAN JOSEPH GARCIA,[1]        ) Case No. SACV 15-0397-JPR
                                       )
12                   Petitioner,       )
                                       )
13              v.                     ) MEMORANDUM OPINION AND ORDER
                                       ) DENYING PETITIONER'S MOTION FOR
14   T. PEREZ, Warden,                 ) DISCOVERY; DENYING PETITIONER'S
                                       ) MOTION FOR EVIDENTIARY HEARING;
15                   Respondent.       ) GRANTING RESPONDENT'S MOTION TO
                                       ) DISMISS; AND DISMISSING ACTION
16   _____  ) WITH PREJUDICE

17        On February 26, 2015, Petitioner constructively filed a

18   Petition for Writ of Habeas Corpus by a Person in State Custody.[2]

19   At the same time, he filed an "Election Regarding Consent to

20   Proceed Before a United States Magistrate Judge," indicating that

21   _____

22        [1]   Petitioner   occasionally   spells   his   first   name
23   "Johnathan." Because it appears without the first "h" in the
     caption on the Petition, the Court uses that spelling.

24        [2]   The Court adopts the signature date of the Petition as
25   the constructive filing date.  See Houston v. Lack, 487 U.S. 266,
     276 (1988) (pro se prisoner constructively files pleading when he
26   delivers it to prison authorities for mailing); Roberts v.
     Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) ("When a prisoner
27   gives prison authorities a habeas petition or other pleading to
     mail to court, the court deems the petition constructively 'filed'
28   on the date it is signed.").

                              1

he voluntarily consented to "have a United States Magistrate Judge conduct all further proceedings in this case, decide all dispositive and non-dispositive matters, and order the entry of final judgment." On July 1, 2015, Respondent also consented to proceed before the undersigned.

On July 8, 2015, Respondent filed a motion to dismiss the Petition as untimely. On August 25, 2015, Petitioner filed a notice of opposition to the motion and a separate motion for an evidentiary hearing. The next day, Petitioner filed a "Petitioner's Traverse to Response to Order to Show Cause," which the Court construes as his opposition to the motion to dismiss. On September 22, 2015, Respondent filed a reply.

On October 6, 2015, Petitioner filed a motion for discovery and lodged the proposed discovery requests with the Court. On December 3, 2015, Respondent filed opposition to the motion for discovery, and on January 6, 2016, Petitioner filed a reply.

For the reasons set forth below, the Court denies Petitioner's motions for discovery and for an evidentiary hearing and grants Respondent's motion to dismiss the Petition as untimely.

### BACKGROUND

On February 1, 2011, an Orange County Superior Court jury convicted Petitioner of four counts of lewd acts against a child under 14 and found true allegations that he had committed the offenses against more than one victim. (Lodged Doc. 1 at 2.) On August 19, 2011, the trial court sentenced him to 12 years in state prison. (Id.)

Petitioner appealed.  (Pet., ECF No. 1 at 2-3.)[3]   His counsel failed to find an arguable issue, and Petitioner filed a supplemental brief raising a number of claims.  (Lodged Doc. 1 at 2.)  On June 26, 2012, the California Court of Appeal affirmed the judgment except for modifications to the sentencing order unrelated to the length of Petitioner's sentence.  (Lodged Doc. 1 at 10.)  Petitioner did not file a petition for review.[4]

On October 25, 2012, Petitioner constructively filed[5] a petition for writ of habeas corpus in Orange County Superior Court, which the superior court denied on November 19, 2012.[6] (Pet., ECF No. 1-1 at 57; Opp'n Mot. Dismiss at 2.)  On May 8, 2013, Petitioner constructively filed a petition for writ of habeas corpus in the California Supreme Court, which denied it on July 17, 2013.  (Lodged Docs. 2, 3.)

---

[3]   For the Petition, the Court has used the pagination provided by its Case Management/Electronic Case Filing system.

[4]   Although Petitioner states in his Petition that he filed a petition for review (Pet., ECF No. 1 at 3), he gives a case number that pertains to one of his state habeas petitions, and the Court's review of the California Appellate Courts Case Information website confirms that he did not file a petition for review.

[5]   The mailbox rule applies to state habeas petitions.  See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).

[6]   Respondent has not lodged this habeas petition or order. (Mot. Dismiss at 6 n.3.)  Petitioner has attached to the Petition a superior-court order dated November 15, 2012, which he contends pertains to that petition. (Pet., ECF No. 1-1 at 99.)  That order denies a motion on the ground that Petitioner did not then have a case pending.  (Id.)  Thus, the record does not support Petitioner's assertion that he properly filed a habeas petition on October 25 and it was denied on November 19, 2012.  Nevertheless, for the purpose of its timeliness analysis the Court accepts Petitioner's representations regarding these dates, which Respondent does not contest.  (See Mot. Dismiss at 2, 6.)

1    On August 22, 2013, Petitioner constructively filed another
2  habeas petition in Orange County Superior Court.  (Lodged Doc.
3  14.)  On September 30, 2013, the superior court denied it on
4  procedural grounds.  (Lodged Doc. 15.)  Petitioner filed a
5  "Memorandum in Response to Denial of Habeas Writ Petition," which
6  the superior court denied on January 9, 2014, as unrelated to any
7  pending habeas petition.  (Pet., ECF No. 1-2 at 6-10; Opp'n Mot.
8  Dismiss, Ex. F.)

9    On February 15, 2014, Petitioner constructively filed a
10  habeas petition in the court of appeal, which summarily denied it
11  on April 3, 2014.  (Lodged Docs. 4, 5.)  Before then, on March
12  24, 2014, Petitioner constructively filed a habeas petition in
13  the California Supreme Court, which denied it on June 11, 2014.
14  (Lodged Docs. 6, 7.)

15    Petitioner then filed another habeas petition in Orange
16  County Superior Court,[7] which the superior court denied in a
17  reasoned decision on July 24, 2014.  (Pet., ECF No. 1-2 at 12-
18  19.)  Meanwhile, on June 6, 2014, Petitioner constructively filed
19  a habeas petition in the California Supreme Court, which denied
20  it on September 17, 2014.  (Lodged Docs. 8, 9.)

21    On October 5, 2014, Petitioner constructively filed a habeas
22  petition in the court of appeal, which summarily denied it on
23  October 30, 2014.  (Lodged Docs. 10, 11.)  On November 6, 2014,
24  Petitioner constructively filed a habeas petition in the
25  California Supreme Court, which denied it on February 11, 2015,
26  with a citation to In re Clark, 5 Cal. 4th 750, 767-69 (1993).

27

28    [7]    The parties have not provided a copy of this petition,
and its date of filing is unknown.

4

(Lodged Docs. 12, 13.)  He constructively filed his federal Petition 15 days later.

## PETITIONER'S CLAIMS[8]

I.      The evidence was insufficient to support Petitioner's convictions.  (Pet., ECF No. 1-1 at 32; see also Pet., ECF No. 1 at 23.)

II.     Petitioner's prosecution was barred by the applicable statute of limitations.  (Pet., ECF No. 1-1 at 32; see also Pet., ECF No. 1 at 23-24.)

III.    The trial court erroneously excluded from evidence an audio recording of a 911 call demonstrating Petitioner's daughter's ability to speak Spanish.  (Pet., ECF No. 1-1 at 32; see also Pet., ECF No. 1 at 24.)

IV.     The trial court erroneously denied Petitioner's motion for new trial based on newly discovered impeachment evidence relating to telephone calls allegedly made by his brother to the investigating officer.  (Pet., ECF No. 1-1 at 32; see also Pet., ECF No. 1 at 24.)

V.      Defense counsel was ineffective for failing to investigate Petitioner's employment records.  (Pet., ECF No. 1-1 at 32; see also Pet., ECF No. 1 at 25, 36.)

VI.     Defense counsel was ineffective for failing to investigate Petitioner's former neighbors and landlord, the parking policy of his former apartment building, and a vehicle involved in the offenses.  (Pet., ECF No. 1 at 22; see also Pet.,

---

[8]     The Petition presents Petitioner's claims in a confusing manner, but he has listed them discretely in his opposition to the motion to dismiss.  (Opp'n Mot. Dismiss at 4-5.)

ECF No. 1 at 27-28.)

VII.   Defense counsel was ineffective for failing to call a particular witness and various character witnesses. (Pet., ECF No. 1-1 at 32; <u>see also</u> Pet., ECF No. 1-1 at 4.)

VIII.   Defense counsel was ineffective because he failed to ask during voir dire that a biased juror be excused and failed to request dismissal of a juror who slept during trial. (Pet., ECF No. 1-1 at 32, 37; <u>see also</u> Pet., ECF No. 1 at 29-30.)

IX.   Defense counsel misstated facts while arguing for admission of the audio recording that demonstrated Petitioner's daughter's ability to speak Spanish. (Pet., ECF No. 1 at 42-43.)

X.   The trial court committed instructional error and made personal comments during jury instructions. (Pet., ECF No. 1-1 33, 36-37; <u>see also</u> Pet., ECF No. 1 at 45-47.)

XI.   Defense counsel was ineffective in failing to investigate and call another proposed defense witness. (Pet., ECF No. 1-1 at 33; <u>see also</u> Pet., ECF No. 1 at 48.)

XII.   Defense counsel rendered ineffective assistance by misstating and misquoting letters written by Petitioner at counsel's request. (Pet., ECF No. 1-1 at 33; <u>see also</u> Pet., ECF No. 1 at 49-51.)

XIII.   The prosecutor improperly presented witnesses subpoenaed by the defense as prosecution witnesses. (Pet., ECF No. 1-1 at 33, 35; <u>see also</u> Pet., ECF No. 1 at 52-53.)

XIV.   Defense counsel was ineffective in failing to inform Petitioner that the trial court would instruct the jury regarding lesser included offenses and failing to correct errors in the jury instructions. (Pet., ECF No. 1-1 at 33-34, 36.)

XV.    Defense counsel was ineffective in failing to challenge a juror after she admitted knowing the victims' aunt. (Pet., ECF No. 1-1 at 33; <u>see also</u> Pet., ECF No. 1 at 56-57.)

XVI.    Defense counsel was ineffective in failing to subpoena the correct telephone records in support of a motion for new trial based on newly discovered evidence.  (Pet., ECF No. 1-1 at 33; <u>see also</u> Pet., ECF No. 1 at 58-60.)

**DISCUSSION**

**I.    The Petition Is Untimely**

A.    <u>Applicable Law</u>

The Antiterrorism and Effective Death Penalty Act sets forth a one-year limitation period for filing a federal habeas petition and specifies that the period runs from the latest of the following dates:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)   the date on which the factual predicate of the

7

1   claim or claims presented could have been discovered

2   through the exercise of due diligence.

3  28 U.S.C. § 2244(d)(1).

4   AEDPA includes a statutory tolling provision that suspends

5  the limitation period for the time during which a properly filed

6  application for postconviction or other collateral review is

7  pending in state court. § 2244(d)(2); see Waldrip v. Hall, 548

8  F.3d 729, 734 (9th Cir. 2008). An application is "pending" until

9  it has achieved final resolution through the state's

10 postconviction procedures. Carey v. Saffold, 536 U.S. 214, 220

11 (2002). In California, a state habeas petition remains pending

12 between a lower court's denial of it and the filing of a habeas

13 petition raising the same general claims in a higher state court,

14 as long as that period is "reasonable." Evans v. Chavis, 546

15 U.S. 189, 191-92 (2006). Periods of up to 60 days are generally

16 presumptively reasonable. Cf. id. at 201 (holding unexplained

17 six-month delay unreasonable compared to "short[er] periods of

18 time," such as 30 to 60 days, "that most States provide for

19 filing an appeal to the state supreme court" (citation and

20 alteration omitted)). There is generally no tolling, however,

21 between different rounds of state habeas petitions. See Banjo v.

22 Ayers, 614 F.3d 964, 968 (9th Cir. 2010) ("Only the time period

23 during which a round of habeas review is pending tolls the

24 statute of limitation; periods between different rounds of

25 collateral attack are not tolled."). Finally, the limitation

26 period is not tolled between the time a decision becomes final on

27 direct state appeal and when a state collateral challenge is

28 filed because no case is "pending" during that interval. Thorson

8

v. Palmer, 479 F.3d 643, 646 (9th Cir. 2007).

In addition to statutory tolling, federal habeas petitions are subject to equitable tolling of the one-year limitation period in appropriate cases. Holland v. Florida, 560 U.S. 631, 645 (2010). Determining whether equitable tolling is warranted is a fact-specific inquiry. Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (as amended). The petitioner must show that (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way and prevented timely filing. Holland, 560 U.S. at 649. In addition, "[t]he petitioner must show that 'the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010) (citation omitted). "Equitable tolling is justified in few cases," and "the threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (as amended) (citation and alteration omitted).

The Supreme Court has clarified that "reasonable diligence" is required for equitable tolling, not "maximum feasible diligence." Holland, 560 U.S. at 653 (citation omitted). Nevertheless, the Ninth Circuit has repeatedly declined to extend equitable tolling to petitioners who significantly delayed filing their federal petition. See Lakey v. Hickman, 633 F.3d 782, 787 (9th Cir. 2011) (as amended) (petitioner not reasonably diligent because he waited to file federal petition "additional 141 days" after issuance of intervening Supreme Court decision); Chaffer v.

9

Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam)
(petitioner failed to diligently pursue claims despite apparent
lack of access to legal files because he "never ventured into the
prison library" during relevant two-year period (emphasis
omitted)).

As to the second prong of the inquiry, courts have
recognized several potentially extraordinary circumstances
justifying equitable tolling.  For instance, attorney abandonment
might constitute an extraordinary circumstance in certain
situations.  See Maples v. Thomas, 132 S. Ct. 912, 922-23 & n.7
(2012).  And a petitioner's complete lack of access to his legal
files might constitute grounds for equitable tolling.  Ramirez v.
Yates, 571 F.3d 993, 998 (9th Cir. 2009).

As to both statutory and equitable tolling, a petitioner
bears the burden of demonstrating that AEDPA's limitation period
was sufficiently tolled.  Pace v. DiGuglielmo, 544 U.S. 408, 418
(2005) (equitable tolling); Smith v. Duncan, 297 F.3d 809, 814
(9th Cir. 2002) (statutory tolling), abrogation on other grounds
recognized by Moreno v. Harrison, 245 F. App'x 606, 608 (9th Cir.
2007).

B.   Limitation Period

Because Petitioner did not file a petition for review on
direct appeal, his conviction became final 40 days after the
court of appeal's decision affirming the judgment, when his time
for seeking review in the California Supreme Court expired.  See
§ 2244(d)(1)(A) (judgment becomes final "by the conclusion of
direct review or the expiration of the time for seeking such
review"); Cal. R. Ct. 8.366(b)(1) (court of appeal's decision

10

final in 30 days); Cal. R. Ct. 8.500(e)(1) (petition for review
due within 10 days of court of appeal's decision becoming final);
Hemmerle v. Schriro, 495 F.3d 1069, 1074 (9th Cir. 2007).  Thus,
Petitioner's conviction became final under AEDPA on August 5,
2012, 40 days after the court of appeal's June 26 decision.

     Unless Petitioner can show a later accrual date under
§ 2244(d)(1)(B), (C), or (D) or statutory or equitable tolling
during the limitation period, the statute of limitations began to
run on August 6, 2012, and expired a year later, on August 5,
2013.  See Patterson v. Stewart, 251 F.3d 1243, 1246-47 (9th Cir.
2001) (holding that AEDPA limitation period does not begin until
day after triggering event).

     C.   Later Accrual Date

     Under § 2244(d)(1)(D), the statute of limitations begins to
run on "the date on which the factual predicate of the claim or
claims presented could have been discovered through the exercise
of due diligence."  Petitioner contends he is entitled to a later
accrual date under this provision, presumably as to claim 16, see
Mardesich v. Cate, 668 F.3d 1164, 1171 (9th Cir. 2012) ("[W]e
hold that AEDPA's one-year statute of limitations in § 2244(d)(1)
applies to each claim in a habeas application on an individual
basis."), because he did not learn until sometime between March
and June 2014 that defense counsel had subpoenaed and provided to
the trial court the wrong telephone records in support of the
motion for new trial.[9]  (Pet., ECF No. 1-1 at 38-41, 55-56, 60-
61; Opp'n Mot. Dismiss P. & A. at 41-45; Reply Mot. Disc.,

---

     [9]   Petitioner does not rely on subsections (B) or (C) of
§ 2244(d)(1).

Pet'r's Decl. ¶ 5.)

The purpose of the telephone records was to impeach the investigating officer's testimony that no family member had called him in 2009 regarding a statement allegedly made by Petitioner's daughter to her grandmother implying that she had fabricated the charges against Petitioner. (Pet., ECF No. 1-1 at 37-38; see Lodged Doc. 1 at 4.)  The grandmother testified to the exculpatory statement at trial (Pet., ECF No. 1 at 21; Lodged Doc. 1 at 4), and Petitioner's brother apparently could have testified that he told the officer about it but was not called to the stand (Pet., ECF No. 1-1 at 38).  On direct appeal, the court of appeal summarized the basis for the motion for new trial as follows: "[T]here was new material evidence in the form of records showing [Petitioner]'s brother repeatedly contacted an investigating police officer, allegedly (according to the brother) with information about a conversation between Jane Doe No. 2 and her grandmother in which Jane Doe No. 2 admitted she had fabricated her allegations." (Lodged Doc. 1 at 6.) Petitioner contends that defense counsel erroneously subpoenaed telephone records only for August and September, not November and December, when most of the calls allegedly occurred. (Pet., ECF Nos. 1-1 at 39, 1-2 at 71-75; Opp'n Mot. Dismiss P. & A. at 14-15.)  As a result, although Petitioner's brother stated in his declaration that he had at least five conversations with the officer regarding the matter (Reply Mot. Disc., Ex. C), the telephone records did not show most of them (Pet., ECF No. 1-2 at 71-75).

Petitioner is not entitled to a later accrual date even as

to ground 16 because he knew or should have known the predicate facts for his claim before the AEDPA statute started running. Petitioner was well aware of his brother's alleged conversations with the investigating officer and was responsible for the filing of a motion for new trial on that basis.  In fact, he alleges that he asked defense counsel to file the motion, and when counsel failed to do so, he filed it himself and counsel subsequently subpoenaed the supporting telephone records.  (Pet., ECF No. 1-1 at 38-39.)

Petitioner was also present at the hearing and knew that the trial court reviewed the telephone records provided by counsel and found them unpersuasive.  (Id.; see also Reply Mot. Disc. at 9 (stating that trial court "scanned through the . . . telephone records and determined that the calls were not long enough to make a full-on report"), Ex. C.)  Even if Petitioner did not know the dates of his brother's telephone calls, he could easily have obtained the information from his brother, who attended the trial and provided a declaration for the motion for new trial, although he was not present at the hearing.  (Pet., ECF Nos. 1-1 at 38, 1-3 at 20-21; Opp'n Mot. Dismiss P. & A. at 15.)

Petitioner's dissatisfaction with defense counsel's reluctance to make the motion (Pet., ECF No. 1-1 at 38-39) and with counsel's performance at the hearing (id. at 124; Reply Mot. Disc. at 9-10) should have spurred him to investigate why the trial court found the telephone records unpersuasive.  In fact, Petitioner contends that on direct appeal he asked his appellate counsel to investigate the telephone records (Pet., ECF No. 1-1 at 54), and he challenged the trial court's denial of the new-

trial motion in his supplemental brief on direct appeal (Pet.,
ECF No. 1 at 24).   Nevertheless, by Petitioner's own admission,
he did not follow up with his brother or investigate the
telephone records provided to the trial court until conversations
during family visits in 2014 led him to look into the matter.
(Opp'n Mot. Dismiss P. & A. at 13; Mot. Disc. at 3.)   That is not
diligence.   A reasonably diligent petitioner dissatisfied with
his counsel's handling of the motion would not have needed three
years to discover that the telephone records provided to the
trial court were allegedly incomplete.[10]

     Petitioner tries to analogize his case to <u>Hasan v. Galaza</u>,
254 F.3d 1150, 1151-53 (9th Cir. 2011), involving the timeliness
of an ineffective-assistance claim based on counsel's handling of
a juror-tampering allegation in a motion for new trial.   In that
motion, Hasan claimed that a woman testifying as a prosecution
witness in another case was overheard mentioning his name on the
phone and shortly afterward slipped a note saying "call me" to a
juror in his case.   <u>Id.</u> at 1152.   Hasan's counsel failed to fully
investigate the matter and did not mention the jury-tampering
issue at the hearing on the motion for new trial.   <u>Id.</u>   Hasan
later learned from an inmate that the woman was the long-term
romantic partner of a prosecution witness at Hasan's trial.   <u>Id.</u>
at 1152-53.   The Ninth Circuit concluded that the statute of

_____

[10]   To the extent Petitioner also complains that defense
counsel did not subpoena telephone records showing calls made by
Petitioner's brother to the defense investigator and used the wrong
telephone number to subpoena telephone records concerning calls
made by Petitioner's mother, the records' relevance is far from
clear, but in any event the same analysis applies as to his lack of
diligence.   (Pet., ECF No. 1-1 at 39-40.)

1  limitation did not begin running until Hasan discovered the
2  relationship between the woman and the witness.  Id. at 1154.
3  Although Hasan had known all along that his counsel performed
4  deficiently by not investigating the jury-tampering claim, he did
5  not have a basis for arguing prejudice until he learned of the
6  relationship.  Id. at 1154-55.  The Ninth Circuit remanded for
7  findings regarding when a diligent petitioner could have first
8  discovered the relationship between the woman and the witness.
9  Id. at 1155.

10      Unlike the hidden relationship in Hasan, Petitioner had easy
11  access to all information regarding the factual predicates of his
12  claim, as to both counsel's performance and any prejudice caused
13  by it.  The telephone records subpoenaed by defense counsel were
14  part of the court record, and the dates of the conversations were
15  known to Petitioner's brother, with whom Petitioner was in
16  contact because he had him prepare a declaration in support of
17  the new-trial motion.  See Rodriquez v. Small, No. 09-cv-0993-WQH
18  (PQR), 2010 WL 987008, at *4 (S.D. Cal. Feb. 10, 2010)
19  (distinguishing Hasan based on lack of diligence when petitioner
20  could have discovered counsel's failure to question prior counsel
21  regarding their investigations simply by asking him), accepted by
22  2010 WL 987004 (S.D. Cal. Mar. 16, 2010).  A limitation period
23  begins running when the petitioner knows or through diligence
24  could have discovered the important facts, not when he recognizes
25  their legal significance.[11]  Hasan, 254 F.3d at 1154 n.3.

26

27      [11]  It is doubtful that the additional telephone records
28  would have added much to Petitioner's motion for new trial.
    California courts do not generally grant a new trial based solely

1  Accordingly, Petitioner has not shown entitlement to a later

2  trigger date under § 2244(d)(1)(D) as to claim 16, and he has not

3  argued that he is entitled to a later trigger date as to any

4  other claim.[12]

5      D.  <u>Statutory Tolling</u>

6  Petitioner is not entitled to tolling of the period between

7  August 6, 2012, when his conviction became final, and October 25,

8  2012, when he filed his first habeas petition, because no case

9  was pending during that time.  <u>See</u> <u>Thorson</u>, 479 F.3d at 646.

10 Thus, when Petitioner filed his first state habeas petition, 80

11 days of the one-year limitation period had passed.

12 Under § 2244(d)(2), Petitioner is entitled to statutory

13 tolling of the period between October 25, 2012, when he

14 constructively filed his first habeas petition, and November 19,

15 2012, when the superior court denied it.  (Pet., ECF No. 1-1 at

16 57; Opp'n Mot. Dismiss at 2.  <u>But see</u> <u>supra</u> n.6.)  Petitioner is

17 not entitled to statutory tolling, however, between the superior

18 court's denial of his first habeas petition, on November 19,

19 2012, and the filing of his habeas petition in the California

20 ─────────────

21 on new impeaching evidence.  <u>See</u> <u>People v. Hall</u>, 187 Cal. App. 4th

22 282, 299 (Ct. App. 2010) ("Critically, 'a new trial on the ground

    of newly discovered evidence is not granted where the only value of

23 the newly discovered testimony is as impeaching evidence' or to

    contradict a witness of the opposing party." (alteration and

24 citation omitted)).  The records were intended solely to impeach

    the investigating officer's testimony.

25

26 [12]  The Court assumes that Petitioner has correctly

    represented what the telephone records he faults defense counsel

27 for not subpoenaing would have shown.  Accordingly, the Court's

    denial of Petitioner's request for discovery of these records makes

28 no difference to its timeliness analysis.

Supreme Court on May 8, 2013.  (Lodged Doc. 1.)  The 170-day
interval substantially exceeds the 30 to 60 days the U.S. Supreme
Court has identified as "reasonable" for gap tolling.  See Evans,
546 U.S. at 201 (refusing to apply equitable tolling to
unexplained six-month gap); see also Stewart v. Cate, 757 F.3d
929, 935-36 (9th Cir.) (as amended) (unexplained 100-day gap
unreasonable), cert. denied, 135 S. Ct. 341 (2014); Velasquez v.
Kirkland, 639 F.3d 964, 968 (9th Cir. 2011) (91- and 81-day gaps
unreasonable); Chaffer, 592 F.3d at 1048 (115- and 101-day gaps
unreasonable).

     Petitioner contends that on December 11, 2012, he was
transferred to Avenal State Prison, where he contracted Valley
Fever (coccidioidomycosis), was hospitalized for a while, and
upon his return to prison received insufficient access to the law
library.  (Opp'n Mot. Dismiss P. & A. at 9-11.)   These
allegations, which are discussed in further detail in connection
with Petitioner's equitable-tolling arguments, do not justify
more than a small portion of his 170-day delay.  Petitioner was
back from the hospital by at least February 15, 2013 (Reply Mot.
Disc., Ex. G), and most of the claims presented in his May 8,
2013 habeas petition were the same as the claims in his
supplemental brief on direct appeal (compare Lodged Doc. 2 with
Pet., ECF No. 1 at 22).   Thus, limited access to the law library
after his return from the hospital cannot account for the three
or more months it took him to file his next petition.

     Accordingly, when Petitioner filed his May 8, 2013 petition,
250 days of the AEDPA limitation period had expired.   The
limitation period was tolled until the California Supreme Court

17

denied the petition, on July 17, 2013.  Petitioner's next habeas petition was filed in Orange County Superior Court on August 22, 2013.  When a later petition is not filed in a court of "greater jurisdiction," gap tolling is warranted only if the subsequent petition was timely filed and is limited to an elaboration of the facts relating to the claims in the earlier petition.  Torres v. Long, 527 F. App'x 652, 654 (9th Cir. 2013), cert. denied, 134 S. Ct. 931 (2014); Banjo, 614 F.3d at 968-69.  Respondent argues that the August 22, 2013 petition does not qualify because it included a new instructional-error claim in addition to the ineffective-assistance claims raised in the May 8, 2013 petition. (Mot. Dismiss at 7.)  In fact, the May 8 petition contains an instructional-error claim similar, although not identical, to one in the August 22 petition.  (Compare Lodged Doc. 2, Ground 8 and Lodged Doc. 14, Ground 8.)  Giving Petitioner the benefit of the doubt, he is entitled to gap tolling for the period between July 17 and August 22, 2013.  The statute of limitations was tolled until the superior court denied his petition, on September 30, 2013.  At that time, 250 days of the 365-day limitation period had expired, and Petitioner had 115 days, or until January 23, 2014, to file his federal petition.

The record does not show the date of Petitioner's next filing, a "Memorandum in Response to Denial of Habeas Writ Petition" filed in the superior court, but the superior court construed it as a challenge to the denial of Petitioner's prior habeas petition and denied it on January 9, 2014, for lack of jurisdiction.  (Pet., ECF No. 1-2 at 6-10; Opp'n Mot. Dismiss, Ex. F (citing Jackson v. Super. Ct., 189 Cal. App. 4th 1051, 1064

18

n.5 (Ct. App. 2010) ("An order denying a petition for writ of habeas corpus in the superior court is final immediately upon its filing, and review of the order can only be had by the filing of a new petition in the Court of Appeal.")).)  Accordingly, the "Memorandum" was not "properly filed" within the meaning of § 2244(d)(2) and could not have tolled the running of the limitation period.  See Artuz v. Bennett, 531 U.S. 4, 8 (2000) (application for state postconviction or other collateral review properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings"); Chappell v. Gipson, No. 13-cv-00892-LJO-BAM-HC, 2014 WL 801057, at *6 (E.D. Cal. Feb. 27, 2014) (motion for reconsideration of superior court's denial of habeas petition was not "properly filed" and did not toll limitation period).

Petitioner next filed a habeas petition in the court of appeal, on February 15, 2014.  (Lodged Doc. 4.)  He is not entitled to gap tolling from the date the superior court had denied his last "properly filed" habeas petition, September 30, 2013, because 138 days had passed.  That is significantly longer than the 30 to 60 days generally deemed reasonable for gap tolling, and Petitioner has not justified the delay.  See Evans, 546 U.S. at 201; Stewart, 757 F.3d at 935-36; Velasquez, 639 F.3d at 968; Chaffer, 592 F.3d at 1048.  Thus, the AEDPA statute of limitations expired on January 23, 2014, 115 days after the September 30, 2013 superior-court denial and more than a year before Petitioner filed his federal Petition.  Petitioner's subsequent habeas petitions could not toll the limitation period

because it had already run.[13]   See Ferguson v. Palmateer, 321
F.3d 820, 823 (9th Cir. 2003) (holding that § 2244(d) "does not
permit the reinitiation of the limitations period that has ended
before the state petition was filed" even if state petition was
timely filed).

Accordingly, statutory tolling does not render the Petition
timely.

E.   Equitable Tolling

Petitioner contends that he is entitled to equitable tolling
because of mistreatment by prison staff, insufficient library
access, bad legal advice from inmate clerks, his Valley Fever
infection, and lack of proficiency in English.  (Opp'n Mot.
Dismiss P. & A. at 38-40.)

Petitioner alleges that "guards at Wasco Reception Center
harassed [him] at the time of the direct appeal and prevented
[h]im from attending the law library when [he] requested."  (Id.
at 38.)  He further alleges that during his "direct review"
period correctional staff "made excuses that the law library was
closed."  (Id.)  He declares that between September 1, 2011, and
December 12, 2012, while he was at Wasco, he was allowed to go to
the library only every three months for one and a half hours at a
time, and he was able to go to the library only three times while
detained at Avenal between December 13, 2012, and July 20, 2013.
(Reply Mot. Disc., Pet'r's Decl. ¶¶ 1, 2.)

---

[13]   Indeed, the California Supreme Court denied his final
state habeas petition with a citation to Clark, 5 Cal. 4th at 767-
69, indicating that it was untimely.  (Lodged Doc. 13); see Boyd v.
Lackner, No. CV 14-4016-DOC (FFM), 2015 WL 1383235, at *5 (C.D.
Cal. Mar. 23, 2015).

As an initial matter, Petitioner cannot claim equitable tolling based on events that occurred before August 6, 2012, when the AEDPA statute of limitations started running.  Thus, any staff mistreatment or problems accessing the Wasco library before August 6, 2012, are not relevant to this analysis.

Moreover, a petitioner's limited access to a prison law library does not by itself constitute an "extraordinary circumstance" warranting equitable tolling.  See, e.g., Scott v. Carey, 415 F. App'x 821, 822 (9th Cir. 2011) (no equitable tolling based on limited library access absent showing that it caused untimely filing of federal petition); Ramirez, 571 F.3d at 998 ("Ordinary prison limitations on [petitioner's] access to the law library and copier (quite unlike the denial altogether of access to his personal legal papers) were neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner."); Frye, 273 F.3d at 1146 (lack of access to library materials does not automatically constitute basis for equitable tolling).  Petitioner does not allege a complete denial of access to the law library and has not explained how the limitations on access prevented him from filing his federal petition on time, especially as he was able to file his October 25, 2012 habeas petition while at Wasco and his May 8, 2013 habeas petition while at Avenal.  (Pet., ECF No. 1-1 at 57-58; Opp'n at 2; Lodged Doc. 2.)  See Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010) (no equitable tolling when, among other things, inmate "managed to file several petitions for post-conviction relief in state court" during relevant period).  Furthermore, he admits that he received sufficient library access after he was transferred to

21

CIM, on July 25, 2013, approximately six months before the AEDPA limitation period expired. (Pet., ECF No. 1-1 at 58; Opp'n Mot. Dismiss P. & A. at 10); see Scott, 415 F. App'x at 822 (when extraordinary circumstances exist early in limitation period, causation is "more difficult" to demonstrate).

Petitioner also refers to an August 8, 2012 incident when correctional officers forced him to spend several hours in a cell with an inmate who demanded to "see his papers" (presumably to ascertain the nature of Petitioner's conviction offenses) and threatened and punched him when he did not comply. (Pet., ECF No. 1-1 at 57; Reply Mot. Disc., Pet'r's Decl. ¶ 1.) Petitioner spent a sleepless night but was moved to another cell the next day. (Opp'n Mot. Dismiss P. & A. at 9.) He asserts that he needed to dispose of his legal papers to protect himself but does not elaborate. (Pet., ECF No. 1-1 at 57; see also Opp'n Mot. Dismiss P. & A. at 10.) Regardless, this one-day incident occurred two days after the AEDPA limitation period started running and cannot explain his failure to file a timely federal Petition. See Scott, 415 F. App'x at 822.

Petitioner also contends that he received deficient advice from law-library staff and inmate clerks, who did not tell him about the AEDPA limitation period, did not explain the procedures for exhaustion in California state courts, and occasionally misled him, including by advising him to refile at the superior-court level instead of proceeding to the court of appeal. (Pet., ECF No. 1-1 at 57-58; Opp'n Mot. Dismiss P. & A. at 39-41; Reply Mot. Disc., Pet'r's Decl. ¶ 3.) Even if Petitioner's untimely filing of his federal Petition is attributable in part to his

ignorance of the federal habeas statute and the California postconviction process, "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).

Similarly, erroneous legal advice from other inmates unfortunately is not uncommon and does not constitute an extraordinary circumstance. See Chaffer, 592 F.3d at 1049 (reliance on inmate law clerk to prepare and file habeas petitions did not warrant equitable tolling); Marsh v. Soares, 223 F.3d 1217, 1220-21 (10th Cir. 2000) (allegation that inmate law clerk assisting petitioner took 170 days to prepare state habeas application insufficient to warrant equitable tolling because other inmate's assistance "does not relieve [petitioner] from the personal responsibility of complying with the law"). Indeed, given that erroneous advice by counsel in connection with postconviction filings generally does not warrant equitable tolling, see Lawrence v. Florida, 549 U.S. 327, 336 (2007) (stating that "[a]ttorney miscalculation [of limitation period] is simply not sufficient to warrant equitable tolling"); Randle v. Crawford, 604 F.3d 1047, 1058 (9th Cir. 2010) (as amended) (counsel's incorrect advice regarding time frame for filing state petitions did not equitably toll AEDPA limitation period); Miranda v. Castro, 292 F.3d 1063, 1066-67 (9th Cir. 2002) (counsel's negligence in calculating due date for federal habeas petition did not toll limitation period), erroneous advice by library staff or inmate clerks will not do so either. See, e.g., Altheimer v. Stewart, No. C05-1580-RSM, 2006 WL 2597941, at

*3-4 (W.D. Wash. Sept. 8 2006) (erroneous information provided by
prison law librarian and others did not entitle inmate to
equitable tolling); Nelson v. Sisto, No. C-11-0313 EMC (pr), 2012
WL 465443, at *9 (N.D. Cal. Feb. 13, 2012) (reliance on another
inmate's bad advice to obtain counsel's files before starting
work on habeas petition did not warrant equitable tolling).

Petitioner also contends that he is entitled to equitable
tolling based on his Valley Fever infection, which "affected
[him] substantially at every level with tremendous physical
illness that . . . impaired him from exhausting his state
claims." (Opp'n Mot. Dismiss P. & A. at 39.)  A severe physical
illness requiring hospitalization can equitably toll the statute
of limitations.  See, e.g., Leon v. Hedgpeth, 467 F. App'x 665,
666 (9th Cir. 2012) (equitable tolling when petitioner suffered
severe illness requiring two hospitalizations and morphine
shortly before limitation period expired).  Petitioner, however,
must show that his illness prevented him from filing a timely
Petition.  Compare id. (equitable tolling when petitioner's
condition worsened significantly during relevant period) with
Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (mental
disabilities and multiple sclerosis did not warrant equitable
tolling when petitioner's condition during relevant period no
worse than when he filed state habeas petitions), amended on
other grounds by 447 F.3d 1165 (9th Cir. 2006).

Petitioner declares that at some point after he arrived at
Avenal on December 13, 2012, he was hospitalized with Valley
Fever and remained sick with the infection throughout 2013.
(Reply Mot. Disc., Pet'r's Decl. ¶ 2.)  The record does not show

24

how long Petitioner's hospitalization lasted, but a "ducat" for
an immunization shot on February 15, 2013, shows that he was back
in prison by that time.[14]  (Reply Mot. Disc., Ex. G.)  He has
attached documents showing that between March 21 and October 10,
2013, he received medical examinations, x-rays, and CT scans.
(Opp'n Mot. Dismiss, Ex. D.)  The most detailed medical record,
progress notes for a June 19, 2013 medical visit, reflects that
he was fully ambulatory but complained of fatigue, "severe at
times."  (Id.)  But when the doctor requested that he come back
in a week, Petitioner asked that it be two weeks instead.  (Id.)

While Petitioner's illness may have slowed down his
progress, he has not shown that it was so severe as to prevent
him from filing a timely federal petition.  In fact, Petitioner
was able to file two state habeas petitions during the time he
was receiving treatment, the May 8, 2013 supreme-court petition
and the August 22, 2013 superior-court petition.  (Lodged Docs.
2, 14); see Roberts, 627 F.3d at 773; Gaston, 417 F.3d at 1035
(affirming district court's conclusion that "[b]ecause [Gaston]
was capable of preparing and filing state court petitions [during
limitation period], it appears that he was capable of preparing
and filing a [federal] petition during the [same time]").

Finally, Petitioner has not shown that he is entitled to
equitable tolling based on his alleged lack of proficiency in

---

[14]     Petitioner likely would be entitled to equitable tolling
for the period he was actually hospitalized, but he has not met his
burden of providing evidence showing when that was.  In any event,
the period was necessarily relatively brief, sometime between
December 27, 2012 — when, approximately, Petitioner alleges he
became sick (Opp'n Mot. Dismiss at 9) — and February 15, 2013, and
would not change the result here.

English.   The record amply demonstrates Petitioner's familiarity with the English language.   He wrote lengthy notes and letters to his counsel and the trial judge in English.   (Pet., ECF Nos. 1-2 at 85-100, 1-3 at 1-18, 37-48; Reply Mot. Disc., Ex. F.)   He has also prepared this Petition and numerous state habeas petitions in English.   Even if he was obliged to "read and re-read" legal materials and learn new words when he began the exhaustion process (Opp'n Mot. Dismiss P. & A. at 40), he has not shown that his lack of reading fluency or comprehension was ever a serious obstacle.   Moreover, he has not shown that throughout the limitation period he was diligently pursuing "either legal materials in his own language or translation assistance from an inmate, library personnel, or other source." Mendoza v. Carey, 449 F.3d 1065, 1070 (9th Cir. 2006); see Garcia v. Yates, 422 F. App'x 584, 585 (9th Cir. 2011) (denying tolling to Spanish-speaking inmate because he had not demonstrated that despite reasonable diligence he could not procure assistance).

Accordingly, Petitioner has not shown any extraordinary circumstance, either alone or in combination, preventing him from filing a timely federal Petition.   He is not entitled to equitable tolling.[15]

---

[15]   Almost all of Petitioner's equitable-tolling arguments relate to the 170-day period discussed supra.   If Petitioner were credited with statutory tolling for any portion of that period he could not also receive equitable tolling for the same period.   See Valenzuela v. Small, No. CV 10-02428-DSF (DFM), 2015 WL 7971087, at *9 n.8 (C.D. Cal. Nov. 20, 2015) (noting that court cannot apply equitable tolling to period already statutorily tolled), accepted by 2015 WL 8022548 (C.D. Cal. Dec. 4, 2015), appeal docketed, No. 15-56971 (9th Cir. Dec. 24, 2015).

1   F.   <u>Actual Innocence</u>

2   Petitioner contends that he should be excused from

3   noncompliance with the statute of limitations because he is

4   innocent of his conviction offenses.  (Opp'n Mot. Dismiss P. & A.

5   at 46-51.)

6   Under the "fundamental miscarriage of justice" exception to

7   the AEDPA limitation period, a habeas petitioner may pursue

8   constitutional claims on the merits "notwithstanding the

9   existence of a procedural bar to relief."  <u>McQuiggin v. Perkins</u>,

10  133 S. Ct. 1924, 1931 (2013).  The exception, however, is limited

11  to claims of actual innocence; a petitioner does not qualify if

12  he asserts procedural violations only.  <u>Johnson v. Knowles</u>, 541

13  F.3d 933, 937 (9th Cir. 2008); <u>see</u> <u>Schlup v. Delo</u>, 513 U.S. 298,

14  321 (1995) (observing that Supreme Court precedent has

15  "explicitly tied the miscarriage of justice exception to the

16  petitioner's innocence"); <u>Herrera v. Collins</u>, 506 U.S. 390, 404

17  (1993) ("This . . . fundamental miscarriage of justice

18  exception[] is grounded in the 'equitable discretion' of habeas

19  courts to see that federal constitutional errors do not result in

20  the incarceration of innocent persons." (quoting <u>McCleskey v.</u>

21  <u>Zant</u>, 499 U.S. 467, 502 (1991))).

22  "[A]ctual innocence, if proved, serves as a gateway through

23  which a petitioner may pass whether the impediment is a

24  procedural bar . . . or . . . expiration of the statute of

25  limitations."  <u>Perkins</u>, 133 S. Ct. at 1928; <u>see also</u> <u>Lee v.</u>

26  <u>Lampert</u>, 653 F.3d 929, 934-37 (9th Cir. 2011) (en banc).  A

27  petitioner "must show that it is more likely than not that no

28  reasonable juror would have convicted him in the light of the new

27

evidence." <u>Perkins</u>, 133 S. Ct. at 1935 (citing <u>Schlup</u>, 513 U.S. at 327); <u>see also</u> <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (noting in context of collateral review of federal criminal conviction that "'actual innocence' means factual innocence, not mere legal insufficiency"). "New" evidence is "relevant evidence that was either excluded or unavailable at trial." <u>Schlup</u>, 513 U.S. at 327-28. The evidence of actual innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." <u>Id.</u> at 316.

Here, Petitioner has not provided any new evidence showing his innocence of the conviction offenses. The sole new evidence consists of the August 2014 declarations of his mother, brother, and sister-in-law, in which they declare that Petitioner's daughter speaks Spanish well enough to have made the exculpatory statement to her grandmother and address defense counsel's failure to call the brother and sister-in-law to testify at trial and to subpoena the correct telephone records for the motion for new trial. (Pet., ECF No. 1-3 at 20-21, 23-24, 26; Opp'n Mot. Dismiss, Exs. A-C.) If called, the brother would have testified to his conversations with the investigating officer and as a character witness, and the sister-in-law would have testified as a character witness. (Opp'n Mot. Dismiss, Exs. A, C.)

A claim of actual innocence requires the introduction of "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." <u>Schlup</u>, 513 U.S. at

28

324.  By contrast, newly presented evidence that provides only "a basis for some degree of impeachment of the prosecution's main witnesses . . . does not . . . fundamentally call into question the reliability of [the] conviction."  Sistrunk v. Armenakis, 292 F.3d 669, 677 (9th Cir. 2002) (en banc).

Here, Petitioner has not proffered new evidence that he did not molest his daughter and stepdaughter or impeaching their testimony that he did.  At most, the new evidence buttresses the credibility of impeachment evidence already presented at trial — Petitioner's mother's testimony about the exculpatory statement allegedly made by his daughter — by providing evidence impeaching the daughter's testimony that her conversations with her grandmother were hampered by her imperfect command of Spanish. Similarly, the new evidence regarding the telephone records would merely impeach — possibly — the investigating officer's testimony that he did not receive calls from Petitioner's relatives regarding the victim's exculpatory statement.  That is a far cry from demonstrating that Petitioner is actually innocent.  Compare Sistrunk, 292 F.3d at 677 (Schlup not satisfied by evidence showing that prosecution expert misrepresented findings of study or by evidence contradicting child victim's description of rapist's penis), with Carriger v. Stewart, 132 F.3d 463, 477-79 (9th Cir. 1997) (credible confession by likely suspect that he had committed crime and framed petitioner satisfied Schlup). Petitioner has not shown that it is more likely than not that no reasonable juror would have convicted him if the new evidence had been introduced at trial.  Perkins, 133 S. Ct. at 1935; Schlup, 513 U.S. at 327; Lee, 653 F.3d at 937.  He has not surmounted the

"extremely high hurdle" set by the "exacting standard" for the actual-innocence gateway.  <u>Stewart</u>, 757 F.3d at 938.  Accordingly, he is not entitled to the "miscarriage of justice" exception to the AEDPA statute of limitations.[16]

G.   <u>Conclusion</u>

As discussed above, the AEDPA limitation period began to run on August 6, 2012, and expired on January 23, 2014.  Petitioner constructively filed his federal Petition on February 25, 2015, more than a year later.  He has not overcome the bar of the statute of limitations through a showing of actual innocence.  Accordingly, the Petition must be dismissed as untimely.

**II.   Petitioner's Motion for Discovery Is Denied**

Petitioner has moved for permission to conduct discovery.  He wants to serve the following discovery requests: (1) a subpoena for the telephone records that he contends defense counsel should have subpoenaed to support the motion for new trial; (2) interrogatories and requests for admission propounded to two Wasco correctional officers responsible for housing him with an allegedly dangerous inmate on August 8, 2012; and (3) interrogatories, requests for admission, and document requests propounded to an inmate clerk at the CIM law library who allegedly gave Petitioner incorrect advice regarding exhaustion of his claims.  (Mot. Disc., Ex. A.)

"Parties in habeas cases, unlike those in ordinary civil cases, have no right to discovery."  <u>Bittaker v. Woodford</u>, 331 F.3d 715, 728 (9th Cir. 2003) (en banc).  In a habeas case,

---

[16]   As discussed in Section III, Petitioner's showing is also insufficient to entitle him to an evidentiary hearing.

30

discovery may be conducted only with leave of Court, upon a showing of good cause.  Under Rule 6(a) of the Rules Governing § 2254 Cases in U.S. District Courts, a habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the court's exercise of discretion.  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  Id. at 908-09 (alteration in original) (citing Harris v. Nelson, 394 U.S. 286, 300 (1969)).

To the extent Petitioner argues that discovery of the telephone records is pertinent to his ineffective-assistance claim challenging defense counsel's failure to obtain the records (Mot. Disc. at 5), the Court has already found that the claim is barred by the AEDPA statute of limitations.  Discovery of the telephone records would not help Petitioner show that the claim is timely because the Court has assumed the truth of his allegations regarding what the telephone records would show. There can be no good cause for allowing discovery pertinent only to the merits of an untimely claim.[17]   See United States v. Skinner, Nos. 03:03-CR-00176-LRH-VPC, 03:06-CV-00733-LRH-VPC,

---

[17]   Because the Court has already determined that Petitioner's ineffective-assistance claim concerning the phone records must be dismissed as untimely, it need not consider the applicability of Cullen v. Pinholster, 563 U.S. 170, 180-81 (2011), which limits a habeas court's review of a claim subject to 28 U.S.C. § 2254(d)(1) to the "the record that was before the state court that adjudicated the claim on the merits."

2010 WL 1462935, at *5 (D. Nev. Apr. 9, 2010) (no good cause for discovery under Rule 6(a) when § 2255 motion time barred).

The other discovery requested by Petitioner relates to his equitable-tolling arguments. As previously explained, the August 8, 2012 incident as to which he seeks discovery occurred two days after the AEDPA limitation period started running, and according to Petitioner he was moved to another cell the next day. (Opp'n Mot. Dismiss P. & A. at 9.) The AEDPA limitation period expired on January 23, 2014. Even if the correctional officers were at fault, the incident cannot have prevented Petitioner from filing a timely federal petition. See Ramirez, 571 F.3d at 997 (petitioner must show extraordinary circumstances making it impossible to file timely federal petition); Scott, 415 F. App'x at 822. There is no good cause for the requested discovery because it would not enable Petitioner to show equitable tolling.

The same is true with respect to the discovery Petitioner seeks to propound to the inmate clerk who allegedly gave him erroneous advice regarding the exhaustion process. As explained above, Petitioner's reliance on the inmate clerk's deficient advice is not a basis for equitable tolling. Because the requested discovery would not enable Petitioner to demonstrate equitable tolling, he has not shown good cause under Rule 6(a).

Accordingly, Petitioner's request for discovery is denied.

**III. Petitioner's Motion for an Evidentiary Hearing Is Denied**

Petitioner requests an evidentiary hearing in order to show that he is actually innocent and thus entitled to invoke the "miscarriage of justice" exception to the AEDPA statute of limitations. (Mot. Evid. Hr'g at 45-53.)

32

1  Under that exception, newly presented evidence may call into
2  question the credibility of witnesses at trial, necessitating
3  credibility assessments by the habeas court.  <u>Stewart</u>, 757 F.3d
4  at 941.  "No controlling legal standard exists regarding whether
5  the credibility assessment contemplated in <u>Schlup</u> requires an
6  evidentiary hearing and if so, under what circumstances."  <u>Id.</u> at
7  941 & n.12.

8  As discussed above, Petitioner's newly presented evidence,
9  accepted as true, merely buttresses the credibility of his
10 mother's trial testimony that one of the victims told her,

11 It's not so much what [he] did to me.  He didn't do
12 anything to me.  It's for what he did to my mom.
13 (Lodged Doc. 1 at 4.)  This exculpatory statement, however, was
14 presented at trial.  (<u>Id.</u>)  The new evidence would merely impeach
15 the victim's testimony that her conversation with her
16 grandmother, who does not speak English, was hampered by her
17 imperfect command of Spanish (<u>see</u> Pet., ECF No. 1-2 at 56-58) and
18 would show that Petitioner's brother may have relayed the
19 exculpatory statement to the investigating officer.  Even fully
20 crediting the evidence – which would be the best result
21 Petitioner could achieve at an evidentiary hearing – he would not
22 be entitled to an equitable exception to the limitation period
23 under <u>Schlup</u> because it is not more likely than not that no
24 reasonable juror would have convicted him in light of the
25 evidence.  <u>See</u> <u>Stewart</u>, 757 F.3d at 942 (district court entitled
26 to deny request for evidentiary hearing when new evidence, even
27 if fully credited, would not cause it to lose confidence in
28 outcome of trial).

Accordingly, Petitioner's request for an evidentiary hearing is denied.

**ORDER**

IT THEREFORE IS ORDERED that Petitioner's motions for discovery and for an evidentiary hearing are denied, Respondent's motion to dismiss the Petition is granted, and Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: March 14, 2016

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE